## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number CR-05-068-C |
| | ) | |
| CLEO PATTERSON and | ) | |
| HERMAN MAJORS, JR. | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Now before the Court are two Motions to Suppress, the first filed by Defendant Cleo Patterson (Patterson) and the second filed by Defendant Herman Majors, Jr. (Majors)[1]. Plaintiff United States of America (Plaintiff) filed a response to Major's motion to suppress but did not file a response to Patterson's motion. On August 2, 2005, the Court conducted a hearing on both Motions to Suppress. The Court, upon full consideration of the litigants' briefs and the evidence submitted at the hearing, now **DENIES** both Motions to Suppress.

### BACKGROUND

On the morning of December 31, 2004, Oklahoma Highway Patrol Trooper Jeff Steelman (Trooper Steelman) clocked a red Volkswagen van traveling at 86 m.p.h. in a 70 m.p.h. zone on Interstate 40. Trooper Steelman instigated a traffic stop and asked Patterson, the driver, to step back to the patrol vehicle. The passenger in the van, Majors, remained in the van. In his patrol vehicle, Trooper Steelman informed Patterson that he would receive

---

[1] Majors also filed a notice with the Court adopting the arguments contained in Patterson's motion to suppress. (Dkt. No. 38.)

only a warning.  While in the patrol vehicle, Patterson inquired about multiple pieces of equipment in the vehicle and also engaged Trooper Steelman in conversation on various subjects.  During this time, Trooper Steelman inquired of Patterson's travel plans, ownership of the Volkswagen van, and Patterson's insurance and registration for the van.  Patterson responded that he owned the van and that the insurance and registration were in the door of the van.  Trooper Steelman exited his patrol vehicle, approached the van, requested Majors to retrieve the insurance and registration from the van's door.  Trooper Steelman also briefly questioned Majors.  Majors found the necessary documents and handed the documents to Trooper Steelman.  During this encounter, Trooper Steelman believed that Majors appeared nervous.  Upon Trooper Steelman's return to his patrol vehicle, he contacted dispatch and requested a warrant and arrest check on Patterson as well as checks on Patterson's driver's license and registration.

Oklahoma Highway Patrol Trooper Garrett Vowell (Trooper Vowell) and his dog Hilto arrived on the scene approximately ten minutes after the initial traffic stop.  Trooper Steelman and Trooper Vowell are partners.  Trooper Steelman stepped out of his patrol vehicle and advised Trooper Vowell that Patterson appeared extremely nervous, talkative, sweaty, and that Defendants gave conflicting stories regarding their travel history.  Dispatch notified Trooper Steelman that his "returns" on the requested checks were ready.  Trooper Steelman returned to the front seat of his patrol vehicle while Trooper Vowell entered the patrol vehicle and sat behind Patterson to observe his actions.  Dispatch informed Trooper Steelman that Patterson had a felony drug record, that Patterson's driver's license was clear, and that the van was

registered to Patterson.  Trooper Steelman asked Patterson several more questions while he finished writing the warning citation.

As Trooper Steelman finished writing the warning citation, Trooper Vowell exited Trooper Steelman's patrol vehicle, retrieved Hilto from his own patrol vehicle, and circled Hilto around the van.  Hilto alerted on the van.  Trooper Steelman asked Patterson if the van contained anything illegal to which Hilto would alert.  Patterson first responded "no" and then "a long time ago, maybe."  Trooper Vowell circled Hilto around the van a second time and again Hilto alerted on the van.  Trooper Vowell asked Majors to step out of the van and he complied.  Trooper Vowell ordered Hilto into the van and Hilto alerted on the area between the van's two captains chairs.  The troopers searched the interior of the van and noticed an abnormality on the edge of the van's floor.  The troopers lifted the floor and discovered a hidden compartment.  The troopers opened the compartment and discovered approximately sixty-seven pounds of cocaine wrapped in clear cellophane.  Trooper Steelman then arrested both Patterson and Majors.

On April 12, 2005, a federal Grand Jury indicted both Defendants on three drug-related offenses:  Count 1, conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846; Count 2, possession with intent to distribute approximately sixty-seven pounds of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count 3, traveling in interstate commerce from Texas to Oklahoma with intent to further a drug trafficking enterprise in violation of 18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2.

<u>DISCUSSION</u>

**I.     Patterson's Motion to Suppress.**

Patterson proffers three primary arguments in support of his contention that the cocaine seized from his van should be suppressed:  that the initial traffic stop was unlawful; that Trooper Steelman unreasonably detained him beyond the length of time necessary to effectuate the purpose of the traffic stop;[2] and, that Trooper Steelman did not have reasonable suspicion in order to continue his detention beyond the length of time necessary to effectuate the purpose of the traffic stop.

It is well established that the protections of the Fourth Amendment "extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  <u>United States v. Williams</u>, 403 F.3d 1203, 1206 (10th Cir. 2005).  Routine traffic stops are analyzed under the two-part test announced by the United States Supreme Court in <u>Terry v. Ohio</u>, 392 U.S. 1, 19-20 (1968).  <u>Id.</u>  First, the Court must determine whether the stop was "justified at its inception."  <u>Id</u>.  Second, the Court must determine whether the trooper's conduct during the traffic stop was reasonably related in scope and duration to the circumstances giving rise to the initial traffic stop.  <u>Id</u>.

   A.     <u>*Terry*'s First Prong – Justified at Inception.</u>

"[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a

_____

[2] Patterson neither argued in his brief nor at the hearing that Trooper Steelman's questions exceeded the permissible scope of the traffic stop; therefore, the Court will not address the issue.

traffic or equipment violation has occurred or is occurring." <u>United States v. Botero-Ospina</u>, 71 F.3d 783, 787 (10th Cir. 1995).  That the officer may have had some other subjective motivation for conducting the stop is irrelevant.  <u>United States v. Hunnicutt</u>, 135 F.3d 1345, 1348 (10th Cir. 1998).  In this case, Trooper Steelman testified that he clocked Patterson's van traveling sixteen miles per hour over the posted speed limit and that his radar was in proper working condition.  Clearly, Patterson's speeding violation is sufficient under the Fourth Amendment to justify Trooper Steelman's initial traffic stop.

      B.     <u><em>Terry</em>'s Second Prong – Reasonable Duration.</u>

      A traffic stop must be of limited duration; it must "last no longer than is necessary to effectuate the purpose of the stop." <u>Florida v. Royer</u>, 460 U.S. 491, 500 (1983).  Trooper Steelman may, without unlawfully expanding the traffic stop's duration, request the driver's license, vehicle insurance and registration; inquire about the driver's authority to operate the vehicle; inquire about the travel history and travel plans of the persons detained; ask about the presence of loaded firearms in the vehicle; examine any documents produced; run a computer check on the vehicle's registration; run a computer check on persons detained for any criminal history; and issue a citation or warning.  <u>United States v. Holt</u>, 264 F.3d 1215, 1220-26 (10th Cir. 2001); <u>United States v. Wood</u>, 106 F.3d 942, 945 (10th Cir. 1997); <u>United States v. Shareef</u>, 100 F.3d 1491, 1501 (10th Cir. 1996).  However, a traffic stop may be extended beyond the reasonable time necessary to effectuate the purpose of the stop if the trooper has an objectively reasonable and articulable suspicion that illegal activity is afoot. <u>Holt</u>, 264 F.3d at 1221.

The United States Supreme Court has refused to put a bright-line time limit on what constitutes an acceptable duration of a traffic stop.  United States v. Sharpe, 470 U.S. 675, 685 (1985) (refusing to establish a per se twenty-minute maximum detention period).  What constitutes a reasonable amount of time varies on a case-by-case basis with the Court applying "common sense and ordinary human experience" when making the determination.  Id.  A trooper must work with diligence and without unnecessary dely, but is not required to take the absolute shortest amount of time as can be conceived in hindsight.  See id. at 686-87.  Moreover, "[w]hen a defendant's own conduct contributes to a delay, he . . . may not complain that the resulting delay is unreasonable."  Shareef, 100 F.3d at 1501.

Here, the initial traffic stop lasted approximately fourteen minutes, during which time Trooper Steelman performed multiple tasks in addition to filling out the warning ticket:  he made a second trip to Patterson's van to retrieve insurance and registration documents; he briefly questioned Majors about their travel history; and he requested multiple checks from dispatch and awaited the returns.  Patterson contributed to the delay by asking questions concerning the patrol vehicle's equipment and attempting to carry on a conversation over a wide variety of subjects.[3]  The Court finds that Trooper Steelman acted diligently and did not unreasonably detain Patterson beyond the length of time necessary to write a warning ticket.

---

[3] In addition to questions pertaining to police equipment, Patterson attempted to converse on such topics as a bar shooting in which he was wounded in the back, his grandfather's farm, his grandfather's suffering from "old-timers", why his grandfather cannot drive, religious wars involving Christians, the end of the world, and how 20,000 people recently died.

In the alternative, the Court also finds that Patterson's fourteen-minute detention is justified as Trooper Steelman had reasonable suspicion that criminal activity was afoot. When determining the existence of reasonable suspicion, the Court must look to the totality of the circumstances through the lenses of common sense and ordinary human experience. Wood, 106 F.3d at 946. The Court may not employ a "divide-and-conquer" approach whereby each factor is individually isolated and evaluated. Williams, 403 F.3d at 1207. The Court must give deference to a trooper's experience and ability to distinguish between innocent and suspicious actions; however, a trooper's hunch or inchoate suspicion is insufficient to create reasonable suspicion. Wood, 106 F.3d at 946. The likelihood of criminal activity need not rise to the level of probable cause, and it falls shorter than a preponderance of the evidence standard. United States v. Arvizu, 534 U.S. 266, 273-74 (2002).

In this case, Patterson was highly talkative, attempting to engage Trooper Steelman in varied topics of conversation wholly unrelated to the traffic stop. Patterson acted nervous in that he was sweating, repeatedly pulling his shirt away from his body, shaking, and breathing heavily; furthermore, according to Trooper Steelman's testimony, Patterson's nervousness never subsided even after he was informed that he would only receive a warning ticket. Patterson would yell comments from the patrol vehicle as well as step out of the patrol vehicle while Trooper Steelman was retrieving the insurance and registration documents from the van. According to Trooper Steelman, Majors acted nervous in that he was shaking while looking for the insurance and registration documents. Defendants' travel history conflicted in that Patterson stated they were in Amarillo, Texas for "a couple" days while Majors stated they

were there for four days.  Lastly, Trooper Steelman receive a positive "Triple I" check which indicated that Patterson had a prior drug-related felony record.  Under the totality of the circumstances and giving due deference to Trooper Steelman's professional abilities, the Court finds that Trooper Steelman did have an objectively reasonable and articulable suspicion that illegal activity was afoot sufficient to extend the traffic stop and complete further investigation.

**II.     Majors' Motion to Suppress.**

Majors argues that the initial stop was unlawful; that the troopers' actions were not reasonably related to the initial stop; that the troopers conducted a warrantless search of the van without consent; that the troopers' search of the van cannot be justified by any exception to the warrant requirement; and that the troopers did not have probable cause to search the van.  In response, Plaintiff argues that Majors lacks standing to challenge the search and seizure of the cocaine, that he was not illegally detained, and that the troopers had probable cause to search the van.

A.     Majors' Standing to Challenge the Search and Seizure.

The Fourth Amendment's protection against unreasonable searches and seizures are personal in nature; thus Majors must show that his Fourth Amendment rights were violated when the troopers searched the van.  Rakas v. Illinois, 439 U.S. 128, 132 n.1 (1978).  To demonstrate a personal Fourth Amendment protected interest, Majors must put forth evidence that he had a legitimate expectation of privacy in the area searched and that society is prepared to recognize that expectation as reasonable.  Id. at 148-49.  Majors may accomplish this by

asserting either a property or possessory interest in the van or the cocaine in the van.  Id.; Shareef, 100 F.3d at 1499-1500.

In this case, the evidence presented demonstrates that Patterson, not Majors, owned the van and that Majors was only a passenger in the van.  Also, Majors has not asserted an interest in either the van or the cocaine.  The Court finds that Majors lacks standing to challenge either the search of the van or the seizure of the cocaine; therefore, his third, fourth, and fifth arguments must fail.  United States v. Lewis, 24 F.3d 79, 81 (10th Cir. 1994) ("Rakas provides the definitive teaching that a 'passenger *qua* passenger' has no reasonable expectation of privacy in a car that would permit the passenger's Fourth Amendment challenge to the search of the car.").

Majors does have standing, however, to challenge other aspects of the traffic stop. Even without an interest in the car or its contents, he may challenge the initial traffic stop itself, his detention, and request suppression of any evidence unlawfully obtained therefrom. United States v. Eylicio-Montoya, 70 F.3d 1158, 1162-1165 (10th Cir. 1995).

B.    Majors' Challenge to the Initial Stop and His Detention.

Majors challenges Trooper Steelman's initial traffic stop of the van and the duration of the traffic stop.  However, as discussed above, the traffic stop was valid and the duration was reasonable.

Majors also challenges the scope of the traffic stop, arguing that the troopers' questioning was not circumscribed by the nature of the traffic violation; however, Majors failed to proffer evidence of his argument.  After reviewing Trooper Steelman's video tape

of the traffic stop, the Court finds that the questions Trooper Steelman asked were reasonably related in scope to the circumstances surrounding the initial traffic stop.  <u>United States v. Alvarez</u>, 68 F.3d 1242, 1245 (10th Cir. 1995).

<h2 align="center">CONCLUSION</h2>

Upon review of the evidence and the law, the Court finds that the December 31, 2004, traffic stop of Defendants was justified at its inception and that Trooper Steelman's conduct during the traffic stop was reasonably related in scope and duration to the circumstances giving rise to the traffic stop.  Patterson's Motion to Suppress (Dkt. No. 37) and Majors' Motion to Suppress (Dkt. No. 27) are **DENIED** for reasons delineated more fully herein.

IT IS SO ORDERED this 5th day of August, 2005.

ROBIN J. CAUTHRON
United States District Judge